UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SILAS KNUDSEN,                              No. 2:07-cv-02231-MCE-KJM

      Plaintiff,

  v.                                        MEMORANDUM AND ORDER

CHSI OF CALIFORNIA, LLC, a
California business entity;
CHSI OF NEVADA, LLC, a Nevada
business entity; DRS QUEST
LLC, a Nevada business entity;
JAMES LEFTWICH, an individual
citizen of Nevada; CRAIG
McCARTY, an individual citizen
of Nevada; and JOE BURGESS, an
individual citizen of Nevada,

      Defendants.

----oo0oo----

On October 17, 2007, Silas Knudsen ("Plaintiff") filed the instant action against CHSI of California, LLC; CHSI of Nevada, LLC; DRS Quest LLC; James Leftwich; Craig McCarty; and Joe Burgess[1].

///

---

[1] Unless otherwise specified, all six defendants will be referred to collectively as "Defendants."

1

Plaintiff alleges breach of contract, wrongful termination, intentional misrepresentation, failure to pay earned wages, and other violations of the California Labor Code. Plaintiff's claims arise out of his employment with CHSI of California, LLC. Presently before the Court is Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6)[2]. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

**BACKGROUND**[3]

From January through March 2005, Plaintiff, then living in Laguna Niguel, California, performed consulting work as an independent contractor for CHSI of California. In or about the first week of March 2005, CHSI of California's Chief Executive Officer, James Leftwich ("Leftwich"), extended an oral offer of full-time employment to Plaintiff, who was charged with creating a new company comprised of a medical provider network. Plaintiff accepted the offer and moved to Roseville, California around the middle of March, 2005.

///
///
///

---

[2] Unless otherwise stated, all further references to a Rule are to the Federal Rules of Civil Procedure.

[3] The factual assertions in this section are based on the allegations in Plaintiff's Complaint unless otherwise specified.

2

1        Leftwich memorialized the employment offer, in writing, by
2   sending Plaintiff a letter, dated March 16, 2005, informing him
3   he would serve as Vice President of Medical Management Services
4   for CHSI of California, earn $96,000 per year in basic
5   compensation and up to $10,000 per year in bonuses, and receive
6   an ownership interest of two percent each year for five years in
7   the company he was creating.  The letter indicated Plaintiff
8   would receive a separate document in the second quarter of 2005
9   explaining the performance benchmarks for the $10,000 bonus and
10  further details as to the ownership interest.  The letter
11  directed Plaintiff to initial a copy and return it to Leftwich to
12  signify Plaintiff's acceptance of the offer.  Plaintiff did so.
13       Plaintiff began working full-time for CHSI of California in
14  Roseville on or around April 14, 2005.  In or around December
15  2005, Plaintiff presented Leftwich, CHSI Senior Executive Vice
16  President Joe Burgess ("Burgess"), and CHSI President Craig
17  McCarty ("McCarty") with a comprehensive business plan for DRS
18  Quest LLC.  At a January 2006 meeting, Defendants Leftwich,
19  Burgess, and McCarty agreed to increase Plaintiff's ownership
20  interest in the new company, DRS Quest LLC, from a maximum of ten
21  percent to a maximum of twenty-five percent over five years.  On
22  February 1, 2006, Leftwich presented Plaintiff with an agreement
23  detailing the ownership interest vesting schedule.  Plaintiff
24  signed the agreement.
25  ///
26  ///
27  ///
28  ///

Leftwich formed DRS Quest LLC as a Nevada entity in January 2006. In the papers he had submitted to the Nevada Secretary of State, Leftwich listed Plaintiff, and no one else, as a manager. Leftwich later informed Plaintiff that he was DRS Quest's president and chief operating officer.

Plaintiff continued working on behalf of DRS Quest throughout the year. In December 2006, in recognition of Plaintiff's efforts, Defendants Leftwich, McCarty, and Burgess rewarded Plaintiff with a Lincoln Town Car and increased his salary from $96,000 to $144,000 annually.

On or about March 14, 2007, Plaintiff attended a meeting in Nevada with Defendants Leftwich, McCarty, and Burgess. At this meeting, the three informed Plaintiff they were planning to change his title to Vice President, Provider Relations and reduce his annual compensation from $144,000 to $80,000. Dissatisfied with the proposal, Plaintiff presented a proposed severance and release agreement to the three Defendants, and told them to have their attorneys contact Plaintiff's attorney. According to Plaintiff, Defendants subsequently terminated Plaintiff and escorted him out of the building. Defendants claim Plaintiff resigned.

**STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.

4

Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1964-65 (2007) (internal citations and quotations omitted).  Factual allegations must be enough to raise a right to relief above the speculative level. Id. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

    A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  The court should "freely give[]" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant,...undue prejudice to the opposing party by virtue of...the amendment, [or] futility of the amendment...." Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962).  Generally, leave to amend is denied only when it is clear the deficiencies of the complaint cannot be cured by amendment. DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

5

**ANALYSIS**

**1.    Alter Ego Claims**

The law of the forum state determines whether a corporation is the alter ego of an individual. <u>Towe Antique Ford Found. v. IRS</u>, 999 F.2d 1387, 1391 (9th Cir. 1993). California recognizes alter ego relationships, permitting a corporation's liabilities to be imposed on an individual or entity, when two conditions are satisfied:  (1) "there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased," and (2) "an adherence to the fiction of the separate existence of the corporation would...sanction a fraud or promote injustice." <u>Wood v. Elling Corp.</u>, 20 Cal. 3d 353, 365 n.9 (1977). "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." <u>Neilson v. Union Bank of Cal., N.A.</u>, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003).

Plaintiff has failed to allege any facts supporting his "alter ego" claims against the three individually named Defendants. Rather, his conclusory allegations amount to little more than a "formulaic recitation of the elements." <u>Twombly</u>, 127 S. Ct. at 1964-65. That he "is informed and believes" that the "individuality and separateness of Defendants have ceased to exist" is insufficient to satisfy the test.  (Compl. 3:24-26.) Plaintiff has conceded this point.  (Pl.'s Opp'n to Def.'s Mot. to Dismiss 3:4-8.)

///

6

Accordingly, Defendants' Motion to Dismiss the alter ego liability of Defendants James Leftwich, Craig McCarty, and Joe Burgess is GRANTED.

### 2. **Particularity of Fraud Claims**

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  To satisfy this standard, the allegations must identify the time, place, and content of the alleged misrepresentation.  <u>Miscellaneous Serv. Workers, Drivers, & Helpers, Teamsters Local # 427 v. Philco-Ford Corp.</u>, 661 F.2d 776, 782 (9th Cir. 1981).  A plaintiff must also plead facts explaining what was false about the statement and why.  <u>Fecht v. Price Co.</u>, 70 F.3d 1078, 1082 (9th Cir. 1995).  Rule 9(b)'s particularity requirement applies to fraud claims under state law.  See <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1103 (9th Cir. 2003).

Plaintiff has pled facts sufficient to satisfy Rule 9(b)'s requirement as to the first claim of fraud in violation of California Labor Code § 970, and as to the fourth claim of intentional misrepresentation.  Plaintiff identifies the time, place, and content of the alleged misrepresentations.  In February 2005, Leftwich and McCarty told plaintiff he would receive partial ownership of the company.  (Compl. 4:20-24.) Leftwich made Plaintiff an oral offer in March 2005.  (Compl. 4:20-5:9.)  Leftwich mailed Plaintiff a letter dated March 16, 2005 to memorialize the offer.  (Compl. 5:13-28.)

On February 1, 2006, Leftwich presented Plaintiff with the DRS Quest Incentive Ownership Agreement, specifying Plaintiff's ownership interest. (Compl. 6:24-7:10.)

Plaintiff also explains what was false about Defendants' statements and why. Defendants promised but did not deliver "[t]he position promised to him for the length of time promised;...[t]he annual salary promised to him for the amount and length of time promised;...[t]he bonus promised to him for the amount promised; nor...[t]he promised ownership interest in DRS Quest." (Compl. 10:3-11.) Plaintiff further states that the owner interest Defendants promised in the DRS Quest Incentive Ownership Agreement was false because he "never received any ownership interest in DRS Quest." (Compl. 14:15, 14:21-22.) Taken together, these allegations suffice to satisfy Rule 9(b)'s particularity requirement.

### 3. Fraud Claims Under California Law

Plaintiff has also pled facts sufficient to satisfy all elements of fraud under California law as to the First Cause of Action, violation of California Labor Code § 970. This statute prohibits employers from inducing employees to move to, from, or within California "by means of knowingly false representations" regarding the nature, length, or conditions, including compensation, of employment. Cal. Lab. Code § 970 (West 2008).
///
///
///

8

1 | To establish such a claim, a plaintiff must allege
2 | (1) misrepresentation, (2) knowledge of falsity, (3) intent to
3 | defraud, (4) justifiable reliance, and (5) resulting damage.
4 | <u>Lazar v. Superior Court</u>, 12 Cal. 4th 631, 638 (1996).
5 |     As already discussed, Plaintiff cites four separate
6 | instances of alleged misrepresentation, which he claims Defendant
7 | Leftwich made for purposes of inducing Plaintiff to move from
8 | Southern California to Roseville.  In support of his claim that
9 | the alleged misrepresentations were false, Plaintiff states he
10 | did not receive the position and annual salary for the
11 | contemplated period of time, the bonus he was promised, or the
12 | promised ownership interest in DRS Quest.  (Compl. 10:3-11.)
13 | Moreover, Plaintiff alleges intent, stating that "Defendants...
14 | influenced, persuaded or otherwise engaged Knudsen to move from
15 | southern to northern California for the purpose of working in
16 | Roseville...by means of knowingly false representations."
17 | (Compl. 9:14-16.)  Leftwich made an oral offer to Plaintiff in
18 | the first week of March 2005.  (Compl. 4:25-5:9.)  In reliance on
19 | this offer and the March 16, 2005 letter, Plaintiff moved to
20 | Roseville in or about mid-March.  (Compl. 5:11-12.)  These
21 | allegations, which must be presumed true for purposes of a motion
22 | to dismiss, adequately plead a violation of California Labor Code
23 | § 970.
24 | ///
25 | ///
26 | ///
27 | ///
28 | ///

9

1  Plaintiff's Fourth Cause of Action, however, for intentional
2 misrepresentation fails because he has failed to adequately
3 allege resulting damage.  The intentional misrepresentation claim
4 focuses on Plaintiff's failure to receive an ownership interest
5 in DRS Quest LLC – a different harm than that alleged in the
6 First Cause of Action, which is predicated on Defendants' alleged
7 falsities inducing Plaintiff to move.
8  Plaintiff claims he was harmed "in that [he] never received
9 any ownership interest in DRS Quest" (Compl. 14:21-22), and that
10 Defendants' allegations promising such an interest were false.
11 The DRS Quest LLC Incentive Ownership Agreement, attached to the
12 Complaint as Exhibit "B," states that the "Owner Interest may be
13 exercised only while Associate remains an employee of CHSI or DRS
14 Quest."  The agreement further states that "[a]ny question as to
15 whether and when there has been a termination of such employment,
16 and the cause of such termination, shall be determined by CHSI
17 senior management, as appropriate, and such determination shall
18 be final."  Id.
19  At the March 14, 2007 meeting in Nevada, Defendants
20 terminated Plaintiff.  (Compl. 8:21-22.)  Under the terms of the
21 contract, as attached to the Complaint, Plaintiff's ownership
22 interest ceased at that moment.  In a motion to dismiss, a court
23 is not required to "accept as true allegations that contradict
24 matters...by exhibit."  Sprewell v. Golden State Warriors, 266
25 F.3d 979, 988 (9th Cir. 2001).  "It is a well-settled rule that
26 when a written instrument contradicts allegations in the
27 complaint to which it is attached, the exhibit trumps the
28 allegations."

10

1  <u>N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend</u>, 163
2  F.3d 449, 454 (7th Cir. 1998).  Here, the allegations of the
3  complaint, which allege that Plaintiff failed to receive the
4  ownership interest to which he claims he was entitled, contradict
5  the attached Incentive Ownership Agreement itself, which states
6  that any ownership interest ceases at the cessation of ownership.
7  Given that language, Plaintiff has failed to show damages for
8  purposes of his Fourth Cause of Action, despite his argument to
9  the contrary in the body of his complaint.  Accordingly,
10 Defendants' Motion to Dismiss the Fourth Cause of Action is
11 GRANTED.

13 **4.    Breach of Contract Claims**

15      To prove breach of contract under California law, a party
16 must demonstrate the existence of a contract, plaintiff's
17 performance of the contract or excuse for nonperformance,
18 defendant's breach, and the resulting damage to plaintiff.  <u>See</u>,
19 <u>e.g.</u>, <u>McDonald v. John P. Scripps Newspaper</u>, 210 Cal. App. 3d
20 100, 104 (Cal. Ct. App. 1989).  Under California law, an
21 employment relationship affords no expectation employment will
22 continue unless the parties have actually adopted such terms.
23 <u>See</u> <u>Guz v. Bechtel Nat. Inc.</u>, 24 Cal. 4th 317, 350 (2000).
24      Plaintiff's second claim is based on the letter Defendant
25 Leftwich sent to Plaintiff on March 16, 2005.  (Pl.'s Ex. A.)
26 The letter establishes the existence of a contract between
27 Plaintiff and CHSI of California.
28 ///

The letter also states that the grant of ownership would be "outlined more specifically in a separate document to be provided in the 2nd quarter 2005." Id.  In performance of the contract, Plaintiff worked for CHSI of California from April 2005 through at least December 2005.  (Compl. 6:2-7.)

Leftwich's letter did not promise Plaintiff a position for five years; the grant of an ownership interest was "based upon continuing employment with CHSI of California."  (Pl.'s Ex. A.) Plaintiff and CHSI of California did not adopt terms fixing the length of his employment in the contract.  Plaintiff's claim that CHSI of California "promised" him an ownership interest is belied by the statement that the interest was contingent upon "continuing employment with CHSI of California."  Accordingly, on the basis of Plaintiff's Complaint, CHSI of California did not breach its contact by failing to guarantee Plaintiff's position for five years.

The contract did, however, promise a salary of $96,000 per year and a bonus of up to $10,000 per year.  In the Complaint, Plaintiff states he did not receive "the annual salary promised to him for the amount and length of time promised" and the "bonus promised to him for the amount promised."  (Compl. 11:11-13.) Inasmuch as Plaintiff claims he did not receive the salary and bonus during the period of his employment, his pleading satisfies the requisite showing of a breach and resulting damages. Accepting all allegations as true, Plaintiff's statements that he received a Lincoln Town Car and an increased salary in December 2006 are not inconsistent with a failure to receive the full salary and bonus he was promised.

12

Additionally, Defendants' alleged failure to provide "the separate document...explaining the performance benchmarks for the $10,000 bonus and further details as to the ownership interest" constituted a breach of their promise to do so.  (Compl. 5:21-22.)

Having established all elements of a breach of contract, Defendants' Motion to Dismiss Plaintiff's Second Cause of Action is DENIED.

**5.    Wrongful Termination in Violation of Public Policy**

California Labor Code § 923 protects the right of an "individual workman" to "full freedom of association, self-organization, and designation of representatives of his own choosing."  Cal. Lab. Code § 923 (West 2008).  A worker may exercise this right "to negotiate the terms and conditions of his employment," and "shall be free from the interference, restraint, or coercion of employers...in the designation of such representatives...."  Id.  Termination of an at-will employee who threatens to sue if the employer does not offer a more lucrative severance package, however, does not violate public policy under § 923, and cannot sustain a wrongful discharge claim.  Salstein v. Ha-Lo Indus., Inc., 82 F. Supp. 2d 1080 (N.D. Cal. 1999).

Plaintiff has presented a colorable claim that Defendants' actions violated California Labor Code § 923.  Unlike the plaintiff in Salstein, who threatened to sue to obtain a more substantial severance arrangement, Plaintiff did not threaten to sue Defendants.

13

Rather, unsatisfied with the proposed demotion and reduction in compensation, he "presented a proposed severance and release agreement to Defendants." (Compl. 12:12-13.)  Because Plaintiff had not yet resigned, the agreement could have been a tactic to "negotiate the terms and conditions of his employment," in the hope that Defendants would have responded with a more favorable position and compensation package.  Only after Plaintiff had presented the agreement and "told Defendants to have their attorneys contact [his] attorney," did Defendants terminate Plaintiff.  (Compl. 12:13-15.)

Because Plaintiff has presented a plausible claim that Defendants violated California Labor Code § 923, Defendants' Motion to Dismiss as to the third claim is DENIED.

### 6.    Breach of Contract - Incentive Ownership Agreement

The DRS Quest LLC Incentive Ownership Agreement begins by stating the contract is between CHSI of Nevada and Plaintiff. (Pl.'s Ex. B.)  DRS Quest LLC was not a party to the contract. The agreement does indicate its purpose is to "build DRS Quest into a profitable, growing business."  Id.  At most, DRS Quest LLC was a third party beneficiary, which would have allowed it to enforce the contract between CHSI of Nevada and Plaintiff. Plaintiff offers no authority to support his claim that he may sue a third-party beneficiary for breach of contract.

///
///
///

14

Nor, as discussed above, has Plaintiff successfully pled an alter ego theory to preserve a claim against both CHSI of Nevada and other entities, including DRS Quest LLC, for breach of the Incentive Ownership Agreement.  Accordingly, Defendants' Motion to Dismiss DRS Quest LLC as a party to the contract is GRANTED.

### 7. **Failure to Pay Earned Wages**

Plaintiff claims DRS Quest LLC did not compensate him for any work performed between January 2006 and March 14, 2007. (Compl. 16:14-17.)  Yet Plaintiff also states CHSI of CA was his primary employer from April 1, 2005, through March 14, 2007. (Compl. 3:8-10.)  He also states Defendants rewarded him with a Lincoln Town Car and an annual salary increase from $96,000 to $144,000.  (Compl. 8:3-6.)  That CHSI of CA compensated Plaintiff does not preclude the possibility that DRS Quest LLC also owed Plaintiff wages.  Accordingly, Defendants' Motion to Dismiss the Sixth and Seventh Causes of Action is DENIED.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part as follows: 1) With respect to the alter ego liability of the individual Defendants, the Motion to Dismiss is GRANTED.  Defendants James Leftwich, Craig McCarty, and Joe Burgess are DISMISSED as parties to this action.
///
///

Leave to amend the Complaint to assert a viable alter ego claim, however, will be GRANTED;  2) Plaintiff has satisfied Rule 9(b)'s particularity requirement as to the First and Fourth Causes of Action.  Defendants' assertion that these claims should be rejected on that basis is accordingly DENIED; 3) Defendants' Motion is DENIED as to the First Cause of Action; 4) Defendant's Motion is GRANTED, with leave to amend, as to the Fourth Cause of Action for failing to allege the requisite damage; 5) The Motion to Dismiss DRS Quest LLC as a Defendant to the Fifth Cause of Action is also GRANTED with leave to amend; and 6) Defendants' Motion is DENIED as to the Second, Third, Sixth, and Seventh Causes of Action.

    Should he choose to do so, Plaintiff may file an amended complaint not later than ten (10) court days following the date of this Order.

    IT IS SO ORDERED.

Dated: March 14, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

16